UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN PRESCOTT, individually and on behalf of all others similarly situated; et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SARAYA USA, INC., a Utah corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.: 23-cv-00017-AJB-MMP<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>**(Doc. No. 30)** |

Before the Court is Defendant Saraya USA, Inc.'s ("Defendant" or "Saraya") motion to dismiss Plaintiffs Steven Prescott, Jonathan Horowitz, and Diane Carter's (collectively, "Plaintiffs") Second Amended Complaint ("SAC," Doc. No. 27). (Doc. No. 30.) Plaintiffs filed an opposition (Doc. No. 32), to which Defendant replied (Doc. No. 33). For the reasons set forth below, the Court **GRANTS in part and DENIES in part** Defendant's motion to dismiss.

## I. BACKGROUND

This action arises out of Plaintiffs' respective purchases of Defendant's "Lakanto Monkfruit Sweetener" Products, which includes two types/flavors of sugar substitutes: "golden" and "classic." (the "Products"). (SAC ¶¶ 2–3.) As depicted on the front labels,

Defendant markets the Products as "zero net carbs," "zero glycemic," "zero calorie," "1:1 sugar replacement," "keto," and "keto approved." (*Id.* ¶¶ 3, 20.) Plaintiffs allege none of these representations are true because they are based on "manipulated and incorrect serving sizes." (*Id.* ¶¶ 3, 29–31.) Plaintiffs further allege that the collection of front label claims "lead a reasonable consumer to think that the Products are good for individuals and that the Products confer particular benefits for diabetics." (*Id.* ¶ 43.)

After granting Defendant's motion to dismiss the initial complaint (Doc. No. 17), Plaintiffs filed a First Amended Complaint ("FAC," Doc. No. 18), which Defendant challenged on another motion to dismiss (Doc. No. 21). In granting in part Defendant's motion and dismissing the FAC, the Court found Plaintiffs failed to sufficiently plead falsity with the specificity required by Rule 9[1] and Plaintiffs failed to allege inadequate legal remedies in order to support a claim for equitable relief. (*See* Doc. No. 26 at 5 ("Based on the foregoing, Plaintiffs' FAC continues to fall short of pleading with specificity any testing, studies, literature, or reports showing that Defendant's label claims have actually been disproved."), 8 ("A plaintiff must plead inadequate legal remedies in the operative pleading to allege claims for equitable relief. As Plaintiffs' FAC contains no such allegation, the Court finds it fails to state any claim for equitable relief.") (citation omitted).) The Court afforded Plaintiffs "a final opportunity to amend the dismissed claims." (*Id.* at 8.)

In the SAC, Plaintiffs raise six claims, the first five of which were also pled in the FAC: (1) intentional misrepresentation; (2) negligent misrepresentation; (3) violation of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* ("CLRA"); (4) violation of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.* ("FAL"); (5) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL"); and (6) unjust enrichment. (*See generally* SAC.) Plaintiffs seek damages, equitable monetary relief, and injunctive relief on behalf of themselves and a putative class

---

[1] All references to Rule or Rules are to the Federal Rules of Civil Procedure unless otherwise stated.

of California purchasers for the period of September 16, 2016, to present. (SAC at 39.)

From the first amended complaint to the second amended complaint, Plaintiffs made the following changes:

1. Adding the phrase "as demonstrated by testing that was entirely derived from FDA-prescribed methodology" to paragraph 23.[2]

2. Adding the phrase "all of which are derived from FDA-prescribed methodology" to paragraph 31.[3]

3. Citing to a "LaMotte, S., *Zero-calorie sweetener linked to heart attack and stroke, study finds*, CNN (Feb. 28, 2023)" for the proposition that "the Products are approximately 250 times sweeter than table sugar . . . ."[4] (SAC ¶ 38 n.2.)

4. Adding "Plaintiffs' legal remedies are inadequate to prevent their future injuries." (*Id.* ¶ 52.)

5. Adding "and/or non-deceptively" to paragraph 86.[5]

6. Alleging a sixth cause of action for unjust enrichment. (*Id.* ¶¶ 131–34.)

Defendant now moves to dismiss the SAC. (Doc. No. 30.)

///

///

---

[2] "Furthermore, the Products are not low in carbohydrate concentration; in actuality,[ ]**as demonstrated by testing that was entirely derived from FDA-prescribed methodology**[, ]the Products contain about one net carbohydrate per gram, and about 116 net carbohydrates per each bag of the Products." (*Id.* ¶ 23 (emphasis added to identify new allegation).)

[3] "In reality, data results, **all of which are derived from FDA-prescribed methodology**, have demonstrated that four grams of the Products contain sixteen calories and four net carbohydrates, while an entire bag of the Products yields 464 calories, and 116 net carbohydrates." (*Id.* ¶ 31 (emphasis added to identify new allegation).)

[4] Based on the information provided, the Court assumes Plaintiffs are referencing the following article, despite the discrepancies in their citation: Sandee LaMotte, *Erythritol, an ingredient in stevia, linked to heart attack and stroke, study finds*, CNN HEALTH (Sept. 29, 2023), https://www.cnn.com/2023/02/27/health/zero-calorie-sweetener-heart-attack-stroke-wellness/index.html [https://perma.cc/Q9CA-BRK9] [hereinafter LaMotte].

[5] "As a result of Defendants' violations, Plaintiffs and the Class suffered, and continue to suffer, ascertainable losses in the form of the purchase price they paid for the unlawfully labelled and marketed Products, which they would not have paid had the Products been labelled correctly **and/or nondeceptively**, or in the form of the reduced value of the Products relative to the Products as advertised and the retail price they paid." (*Id.* ¶ 86 (emphasis added to identify new allegation).)

## II. LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001). To determine the sufficiency of the complaint, the court must assume the truth of all factual allegations therein and construe them in the light most favorable to the plaintiff. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). This tenet, however, does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plausibility demands more than a formulaic recitation of the elements of a cause of action or naked assertions devoid of further factual enhancement. *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint is subject to dismissal. *Id.* at 679.

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "This means the complaint must 'identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false.'" *Davidson v. Sprout Foods, Inc.*, 106 F.4th 842, 852 (9th Cir. 2024), *cert. denied,* No. 24-737, 2025 WL 1151232 (U.S. Apr. 21, 2025) (quoting *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018)). "Rule 9(b) serves three purposes: (1) to provide defendants with adequate notice to allow them to defend the charge and deter plaintiffs from the filing of complaints as a pretext for the discovery of unknown wrongs; (2) to protect those whose reputation would be harmed as a result of being subject to fraud charges; and (3) to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (cleaned up).

///

///

## III. DISCUSSION

Defendant moves to dismiss the SAC, arguing that Plaintiffs have failed to adequately plead (A) falsity of the Products' labels and (B) any claim for equitable relief, including the newly added claim for unjust enrichment. The Court addresses each issue in turn.

### A. False Representation Claims

Defendant seeks dismissal of Plaintiffs' CLRA, UCL, and FAL claims, arguing Plaintiffs fail to allege sufficient facts to support misrepresentation claims and fail to plead with requisite particularity why the Products' statements are false. (Doc. No. 30 at 12–23.) Specifically, Defendant asserts that the SAC still fails "to cite any specific study or provide any factual support" that "the Products are, as a factual matter, not zero glycemic, zero calorie, zero net carbs, keto, keto approved, or a 1:1 sugar replacement[.]" (*Id.* at 13 (internal punctuation omitted), 20.) Moreover, Defendant asserts that Plaintiffs' two references to an "FDA-prescribed methodology" are insufficient because Plaintiffs fail to allege "who . . . conducted the studies/tests, what specific studies/tests were conducted, when the studies/tests were conducted, on which products they were conducted, or what 'FDA-prescribed methodology' was used for the testing." (*Id.* at 16 (citing *Strategic Partners, Inc. v. FIGS, Inc.*, No. CV 19-2286-GW KSX, 2019 WL 12435672 (C.D. Cal. Aug. 19, 2019)[6]).)

In opposition, Plaintiffs assert the SAC includes specific "allegations about the who, what, when, where, and how of [Defendant]'s alleged misconduct," sufficiently informing Defendant about "what is false or misleading about the statements and why it [sic] is false." (Doc. No. 32 at 4–5 (citing SAC ¶¶ 29–36, 55–59) (internal quotation marks omitted).)

---

[6] In *Strategic Partners*, the plaintiff alleged the defendant manufactured, promoted, and sold medical scrubs that it advertised as reducing hospital-acquired infection rates by 66%. *Strategic Partners*, 2019 WL 12435672, at *1. The plaintiff further alleged it had conducted testing that contradicted these claims. *Id.* at 7. The court found the allegations failed to meet the Rule 9(b) pleading standard because without more information, such as "what the tests consist of, who conducted them, when they were performed, or the results that they produced," the defendant "[wa]s not sufficiently on notice about the claims it face[d]." *Id.* at 8.

Moreover, Plaintiffs argue that they "cite data that demonstrate the falsity of Products' labelling and nutritional content claims," and are not required to identify the third-party testers who generated the data. (Doc. No. 32 at 4–5 (citing *Tortilla Factory LLC v. Health-Ade LLC*, No. CV 17-9090-MWF AFMX, 2018 WL 6174708, at *9–10 (C.D. Cal. July 13, 2018)[7]).)

With regard to Plaintiffs' allegations that the Products' "zero net carbs" and "zero calorie" labels are false, the SAC now identifies that the data is "derived from FDA-prescribed methodology," in order to remedy the deficiencies previously identified by the Court (*see* Doc. No. 26 at 4). (SAC ¶¶ 30–34.) Identifying the method of testing, much like in *Tortilla Factory*, is a sufficiently particularized detail to demonstrate Plaintiffs have a factual basis for their false representation claims and to put Defendant on notice of what type of test Plaintiffs' position is based on. *See Kearns*, 567 F.3d at 1125; *see also Tortilla Factory*, 2018 WL 6174708, at *10. As such, cases cited by Defendant that address the inadequacy of generalized statements of tests are inapposite when applied to the SAC. *See, e.g.*, *Strategic Partners*, 2019 WL 12435672, at 8 (no specific testing methodology or other information provided); *Route v. Mead Johnson Nutrition Co.*, No. CV 12-7350-GW JEMX, 2013 WL 658251, at *5 (C.D. Cal. Feb. 21, 2013) (generalized statements of tests and experts coupled with a paper reviewing equivocal evidence).

Defendant characterizes Plaintiff's "anonymous source" as "wholly contradicted by reliable sources of information readily available to consumers such as the Food and Drug Administration [("FDA")] and the U.S. Department of Agriculture [("USDA")]." (Doc. No. 30 at 17.) Specifically, Defendant first points to an FDA regulation that states the when

---

[7] In *Tortilla Factory,* the plaintiff alleged that the defendant's labels indicated its kombucha beverages contained "only 'trace' amounts of alcohol," the labels did not include the warning required for beverages with 0.5% or more alcohol by volume, and the plaintiff learned the beverages contained "between 0.7% and 1.3% alcohol . . . utilizing headspace gas chromatography combined with mass spectronomy from a third party lab to test alcohol levels." *Tortilla Factory*, 2018 WL 6174708, at *8. The court found that the alcohol-related falsity allegations were sufficient to meet the Rule 9(b) burden and that the plaintiff "was not required to identify [in the complaint] the third party that performed the testing[.]" *Id.* at *10.

calculating caloric content "0 calories per gram" may be used as the "general factor[] for caloric value" of erythritol. (*Id.* (quoting 21 C.F.R. 101.9(c)(1)(i)(F)).) Then, Defendant points to the publicly reported nutrient data on monkfruit sweetener that it and other brands have submitted to the USDA's Global Branded Food Products Database. (*Id.* at 18.) However, this argument requires the Court to impermissibly make assumptions in Defendant's favor, including that the self-reported data is correct. To the extent that Defendant seeks the Court to weigh its proffered evidence against that of the SAC, such a determination is improper on a motion to dismiss. *See Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 907 (S.D. Cal. 2020) ("In resolving the motion, the court does not weigh evidence, evaluate witness credibility, or consider the likelihood that a plaintiff will prevail at trial.") (citing *Twombly*, 550 U.S. at 556). Moreover, the Court finds irrelevant any assertions regarding the caloric content of other brands' products in contradicting Plaintiffs' assertions about the Products at issue in this case.[8]

Turning to Plaintiffs' allegations that the Products' "zero glycemic" label is false, Plaintiffs provide no additional factual allegations to address the deficiencies previously identified by the Court (*see* Doc. No. 26 at 5). (SAC ¶¶ 41–46.) As Plaintiffs have not remedied the deficiency, these allegations do not meet the Rule 9(b) standard.

In support of the allegation that the Products' "1:1 sugar replacement" label is false, Plaintiffs assert they "cite data that demonstrate the falsity of [the] Products' labelling and nutritional content claims," making Plaintiffs' claims facially plausible. (Doc. No. 32 at 4–5 (citing *Vasic v. Pat. Health, LLC*, No. 13-CV-00849-AJB-MDD, 2014 WL 940323, at *4 (S.D. Cal. Mar. 10, 2014)).) Specifically, Plaintiffs added a citation to address the Court's previous finding that Plaintiffs' allegation that "the Products are approximately 250 times sweeter than table sugar" lacked factual support. (*Compare* Doc. No. 26 at 5

---

[8] Defendant includes case law to support the proposition that the Court may take judicial notice of the sources it relies on. (*Id.* at 18–19.) As Defendant does not request the Court take judicial notice, *cf.* Fed. R. Evid. 201(c)(2), and the Court finds the self-reported data not to be facts "whose accuracy cannot reasonably be questioned" on the current briefing, the Court declines to *sua sponte* take judicial notice, *see* Fed. R. Evid. 201(c)(1).

*with* SAC ¶ 38 n.2.) The cited article in fact states that "stevia and monk fruit are about 200 to 400 times sweeter than sugar." LaMotte, *supra* note 4. Defendant incorrect states that "Plaintiffs made no updates to their '1:1 sugar replacement' claims with the SAC[.]" (Doc. Nos. 30 at 22; 33 at 6.) Rather, Plaintiffs' inclusion of a citation to an article is sufficient to demonstrate a factual basis for the allegation and meet the particularity standard of Rule 9(b).

Plaintiffs have addressed the deficiencies identified in the Court's prior Order and now plead with sufficient particularity the falsity of Defendant's "zero net carbs," "zero calorie," and "1:1 sugar replacement" labeling. Accordingly, the Court **DENIES** Defendant's motion to dismiss Plaintiffs' UCL, FAL, and CLRA claims on this basis. Additionally, insofar as Plaintiffs' claims of intentional and negligent misrepresentation are based on the same allegations of falsity as those analyzed above, the Court **DENIES** Defendant's motion to dismiss them on the same basis.

### B. Equitable Relief

Defendant seeks to dismiss Plaintiffs' claims for equitable relief, including the newly added sixth cause of action. (Doc. No. 30 at 24–28.) Specifically, Defendant argues Plaintiffs' "single conclusory statement" that "Plaintiffs' legal remedies are inadequate to prevent future injuries" is insufficient to demonstrate inadequacy of remedies at law. (*Id.* at 24–25, 26.) Additionally, Defendant argues that the newly pled cause of action for equitable relief should be dismissed because California does not recognize "nonrestitutionary disgorgement" or stand-alone claims for unjust enrichment and Plaintiffs fail to sufficiently plead a claim for restitutionary disgorgement. (Doc. No. 30 at 25–28.)

Plaintiffs assert that they have adequately alleged the requisite elements of equitable relief as an alternative remedy. (Doc. No. 32 at 5–6.) In addition to stating that their legal remedies are inadequate (SAC ¶ 52), Plaintiffs now allege a sixth cause of action stating that Defendant's "financial benefits resulting from their unlawful and inequitable conduct are economically traceable to Plaintiffs' . . . purchases of the Products," and as such it

would be "inequitable, unconscionable, and unjust for Defendant[] to be permitted to retain these economic benefits" (*id.* ¶¶ 132–33). Instead Plaintiffs "are entitled to equitable relief, including restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits which may have been obtained by Defendants as a result of such business practices." (*Id.* ¶ 134.)

"[E]quitable relief is not appropriate where an adequate remedy exists at law." *Schroeder v. United States*, 569 F.3d 956, 963 (9th Cir. 2009); *see also Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) ("[T]he traditional principles governing equitable remedies in federal courts, including the requisite inadequacy of legal remedies, apply when a party requests restitution under the UCL and CLRA in a diversity action."); *Grausz v. Hershey Co.*, 713 F. Supp. 3d 818, 830–31 (S.D. Cal. 2024) ("Unlike state courts, federal courts have equitable jurisdiction to award equitable relief only where a plaintiff has no adequate legal remedy based on the same harm."). Thus, where monetary damages provide an adequate remedy, a federal court may not consider the merits of equitable claims for restitution, disgorgement, or injunctive relief. *See Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 75–76 (1992); *see, e.g., Feitelberg v. Credit Suisse First Bos., LLC*, 134 Cal. App. 4th 997, 1009 (2005) (noting restitution and injunctive relief are equitable in nature). Plaintiffs bear the burden to establish they lack an adequate damages remedy before they can obtain equitable relief. *See Sonner*, 971 F.3d at 844.

Plaintiffs' conclusory allegations do not establish they lack an adequate remedy at law.[9] *See, e.g., Grausz*, 713 F. Supp. 3d at 831 (dismissing equitable claim for unjust enrichment where the plaintiff's "allegations d[id] not show how restitution would go beyond the damages available to her" or otherwise "show[] that damages [were] inadequate or incomplete"); *Sharma v. Volkswagen AG*, 524 F. Supp. 3d 891, 908 (N.D. Cal. 2021) (finding an injury for "loss of money and/or loss in value . . . is exactly the type of injury for which legal remedies are appropriate") (collecting cases). As such, the Court **GRANTS**

---

[9] Indeed, Plaintiff is seeking damages in the prayer for compensatory damages. That is, of course, a remedy at law.

Defendant's motion with regard to Plaintiffs' claims for equitable relief and **STRIKES** the sixth cause of action.

However, the more extensive allegations regarding equitable remedies that Plaintiffs include as a separate cause of action here are ones that the Court are reviewing for the first time. In light of these new allegations and the liberal policy of amendment, the Court will **GRANT** Plaintiffs leave to amend **for the limited purpose** of providing a plausible factual basis as to why there is no adequate remedy at law. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").

## IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS in part and DENIES in part** Defendant's motion to dismiss the SAC (Doc. No. 30) and **STRIKES** Plaintiffs sixth cause of action (SAC ¶¶ 131–34). Should Plaintiffs desire to amend the complaint, the Third Amended Complaint must be filed, along with a redlined version attached as a separate exhibit, **no later than May 23, 2025**. Any amendments to the complaint must be limited to the leave provided above. **No new causes of action, claims, or amendments to the claims that have survived this motion to dismiss will be entertained.**

**IT IS SO ORDERED**.

Dated: May 9, 2025

Hon. Anthony J. Battaglia
United States District Judge